### City of Chicago v. Cornelius Anglum.

1. PUBLIC IMPROVEMENTS—*Method of Ascertaining Damages When No Property is Taken.*—In the ascertainment of damages to property caused by a public improvement, where none of the property has been taken, the entire improvement made by the city must be considered and not merely a part of it.

2. SAME—*True Rule for Ascertaining Effect upon Property.*—The true rule for ascertaining the effect, if any, of a public improvement upon private property is by an ascertainment of the difference between

the fair cash market value of the property before the construction of the improvement and thereafter. If, by the improvement, it has decreased in value, then it is damaged; but if not so decreased, then it is not damaged.

**Trespass on the Case,** for damages caused to property by a public improvement. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed November 28, 1902.

CHARLES M. WALKER, corporation counsel, and THOMAS J. SUTHERLAND, attorneys for appellant.

THOMAS McENERNY, attorney for appellee; JOHN F. MAHON, of counsel.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This was an action to recover damages said to have been occasioned by certain street improvements made at the instance of the city of Chicago.

The declaration sets forth that the plaintiff was on the 15th day of February, 1897, the owner of certain premises known as No. 4001 and 4003 Armour avenue in the city of Chicago, having a frontage of thirty-four feet on Armour avenue and a depth of 100 feet running along and abutting on Fortieth street. That on the 15th day of February, 1897, the city council passed an ordinance containing, among other things, the following:

"Section 1. The Union Stock Yard and Transit Company of Chicago is hereby ordered and required to depress the plane of its main tracks beneath the road-bed and tracks of the Lake Shore & Michigan Southern Railway Company, and of the Chicago, Rock Island & Pacific Railway Company, when and as the same are elevated, as provided by an ordinance of the city council of the city of Chicago, passed July 9, 1894, and also to elevate its 'Y' connections with the said railroads, upon the same being elevated, all in the manner and upon the conditions hereinafter specified."

And that on the 8th day of March, 1897, the city council passed an ordinance amending the said ordinance passed on

the 15th day of February, 1897. The ordinance of March 8, 1897, providing, among other things, that when the tracks of the Lake Shore & Michigan Southern Railway Company shall have been elevated at Fortieth street, pursuant to the ordinance of July 9, 1894, a certain "Y" connection therein mentioned shall be discontinued and Armour avenue shall be lowered at a grade of approximately three and one-half per cent of such distance on either side of the center of the right of way of the Union Stock Yard and Transit Company as to permit of said Armour avenue crossing at grade the right of way of said Union Stock Yard and Transit Company at approximately the center of said right of way as depressed, as in said ordinance ordered. The declaration charged that in pursuance of such ordinance the city of Chicago and the Union Stock Yard and Transit Company on the 15th day of February, 1897, and subsequently thereto, lowered the grades of Fortieth street and Armour avenue from two to four feet, to the great damage of the said premises of the plaintiff.

Demurrers interposed by the defendants were overruled and the suit having been dismissed as to the Union Stock Yards and Transit Company, the city filed a plea of not guilty.

Upon the trial the plaintiff introduced the ordinance of February 15, 1897, and also that of March 8, 1897, and calling a witness, asked him as to the value of the premises of the plaintiff after the depression of Armour avenue and Fortieth street. To this defendant objected, the defendant then and now contending that in the ascertainment of damages, if any whatever, to the plaintiff's property, none of it being taken, the entire improvement made by the city must be considered and not merely a part of it. Such is undoubtedly the rule. West Side Elevated Ry. Co. v. Stickney, 150 Ill. 362; Metropolitan W. S. Ry. Co. v. White, 166 Ill. 375-380; City of Minneapolis v. St. Paul M. & M. Ry. Co., 35 Minn. 141.

Indeed, we do not understand that appellee, either upon the trial in the court below or here, has insisted otherwise;

notwithstanding the declaration claims damage only for work done in pursuance of the ordinance of February 15, 1897, and the amended ordinance of March, 1897.

We regard the declaration as entirely sufficient, although it does not set forth the work done under the ordinance of 1894. The defendant might have pleaded the doing of the entire work, of which, as it is insisted, that complained of by the plaintiff was but a part.

It was not necessary that the plaintiff should plead work it did not complain of, as that was a matter which most properly should be brought to the attention of the court by the defendant. Stevens on Pleadings, 3d Am. Ed., 314.

This is, however, now quite immaterial, as upon the trial the ordinance of 1894, and the work done thereunder, were given in evidence, if not by each side, at least without objection. We do not think that the plaintiff's witness should, while testifying in chief, have been required to testify only as to the effect of the entire work. As the pleadings stood, the plaintiff was not, upon the trial, bound to presume that his property had been affected in any way save by work done under the ordinances created in 1897.

Upon the trial, plaintiff introduced the following order of the city council, made July 12, 1897:

"Ordered that the commissioner of public works be, and he is hereby directed to compel the Union Stock Yards and Transit Company to maintain the sidewalk on Armour avenue, south from Fortieth street, and on the south side of Fortieth street west, and west from Armour avenue, at the original grade; said company to construct any and all necessary walls, steps and hand-rails, walks, etc., to connect said walks with the roadway as depressed."

The order was of consequence only in case something had been done thereunder; if all done under it was no more than the ordinances heretofore mentioned provided for, it was immaterial, other than as tending to show that all the work complained of was performed at the instance of the city. If that done under this order is not covered by the ordinances heretofore mentioned, the order should not have been allowed in evidence, as it does not appear to

have been set up in the declaration.  As before said, evidence having been introduced as to the entire improvement carried on by the city under all the ordinances and the effect thereof upon the plaintiff's property, the court gave to the jury the following instruction:

"The jury are instructed that in case of damage to private property by reason of a public improvement, the owner of such property is entitled to recover for such damage; and that if you believe from the evidence that the plaintiff's property was so damaged by reason of a public improvement made by defendant, then you should find the defendant guilty, and assess the plaintiff's damages at such a sum as you believe from the evidence will recompense him for the injury sustained."

This, probably by a slip of the pen, is clearly improper. The plaintiff could not recover for damage done by a public improvement not mentioned in the declaration, although it might have been made by the defendant.

The word "recompense" may have been understood by the jury as equivalent to compensate.  It is, however, much better, in instructions, to make use of language that has been approved by the Supreme Court.  The damages allowed are compensatory only.  A plaintiff, in such a case as this, may recover only such sum as will compensate him for the injury he has sustained.

The second and third instructions given at the instance of the plaintiff are quite similar, the third being as follows:

"The jury are instructed that if they believe from the evidence that the plaintiff is the owner of the property described in the declaration in this case, and has been such owner since the year 1884; that his said property is located with reference to Armour avenue and Fortieth street as described in the declaration: that the defendant, the city of Chicago, did depress and lower the grade of said Armour avenue and Fortieth street, and thereby prevented access to said Armour avenue and Fortieth street from the buildings on plaintiff's premises except by means of stairs, and that the plaintiff's said premises were permanently damaged and depreciated in value by reason of being deprived of access to said Armour avenue and Fortieth street, considered as a part of an entire improvement, except as stated,

City of Chicago v. Anglum.

then they should find the defendant guilty, and assess the plaintiff's damages at such sum as they shall believe from the evidence his said premises have been depreciated by the cause aforesaid."

Without the words "considered as a part of an entire improvement" this instruction told the jury that they might give the plaintiff damages for the depression and lowering of the grade of Armour avenue and Fortieth street and the access thereto prevented to Armour avenue and Fortieth street, except by means of stairs, thus leaving out of consideration the effect upon the plaintiff's property of the entire improvement. The words "considered as a part of an entire improvement" are inserted in such connection that it is very doubtful if the jury understood them as meaning that the question of damages was to be determined by a consideration of the effect of the entire improvement, and not merely a portion of it.

The second and third instructions call especial attention to that portion of the improvement which the plaintiff insisted had damaged his property and are objectionable for that reason. So, too, the fourth instruction given at the instance of the plaintiff, told the jury that in assessing the plaintiff's damages they might consider the rental value of his property before and after the change of grade; thus directing their consideration to a minor part of the work, and that portion of the improvement complained of by the plaintiff.

The first instruction given at the instance of the defendant set forth the true rule for ascertaining the effect, if any, by the improvement upon plaintiff's property, that is to say, by an ascertainment of the difference between the fair cash market value of the plaintiff's property, before the construction of the improvement and thereafter. That if by the improvement it was decreased in value, then it was damaged, but if not so decreased, then it was not damaged; and the verdict of the jury should be accordingly.

For the errors mentioned, the judgment of the Circuit Court is reversed and the cause remanded.